Mastín Schenck, J.
This is a motion for an order pursuant to CPLR 2304 to quash a subpoena duces tecum. The motion is made in reliance upon section 79-h of the Civil Bights Law. Both parties hereto concede this to be a case of first impression. No authorities, even by way of strong analogy, are cited. The essence of subdivision (b) of section 79-h is to the effect that no professional journalist or newscaster shall be adjudged in contempt by any court “ for refusing or failing to disclose any news or the source of any such news coming into his possession in the course of gathering or obtaining news for publication * * * or for broadcast by a radio or television transmission station ”. The issue is the applicability of this language to the circumstances before us.
The basic facts herein do not seem to be in controversy. At 7:30 p.m. on Friday, September 17, 1971, the announcer on duty in master control at Station WBAI-FM in New York City received a call from a person who identified himself (or herself) as a member of the “ Weather Underground ”. The caller stated, in effect, that “Weather Underground” was asserting responsibility for bombing the offices of New York State Correction Commissioner Oswald in the City of Albany. The telephone call directed employees of WBAI-FM to a place where a written statement would be found. Investigation of this location revealed an envelope containing a letter signed by the “ Weather Underground ” which is the subject of the subpoena herein. An announcer for the station read the letter verbatim over the air and called the Department of Correction in Albany. There was no response, presumably because the office was closed for the evening. Thereafter he called the Albany Police Department and inquired if the Correction Commissioner’s office had been bombed. He was advised merely that the police had received notice of a “ bomb scare ’ ’ at the building housing Mr. Oswald’s office. A short while after that the radio station received a report from United Press International, a world wide news media, that there had been an explosion at the office building in question. The station thereupon released the text of the letter to all néws agencies which requested it. The letter itself and the envelope remain in the possession of Staff Announcer Neal Conan of Station WBAI-FM.
*357 It appears that no one was injured as the result of the explosion but that substantial property damage was occasioned. It also appears that the explosion took place in such part of the building that only fortuitous circumstances prevented injury or death to employees working that night in an office not part of or related to the Department of Correction. The District Attorney of Albany County is presently conducting a Grand Jury investigation into the incident. The purpose of the subpoena duces tecum is to require production of the letter in question in furtherance of this investigation, the ultimate intent of which would appear to be criminal prosecution of the person or persons responsible. The contents of the letter itself have been made available to the public through WBAI-FM and other media so that there can be no question of confidentiality in that respect. The issue before us is whether the District Attorney in attempting to investigate an obviously criminal act and to bring the miscreants to justice should be denied an avenue of investigation in examining the letter and the envelope in question. WBAI-FM strenuously argues that its status in the broadcasting business of being an outlet for expressions of opinion by organizations which might otherwise be cut off from the media would be seriously threatened, if not totally impaired, if complete confidentiality were not given to communications of this nature and sources thereof. I cannot concur in the argument that section 79-h of the Civil Bights Law, under these circumstances, should provide an exception to the public policy of requiring investigation of crime and prosecution of criminals by the proper authorities. There is far more here than what is referred to in one of the WBAI-FM affidavits (announcer Conan’s, dated October 22, 1971) as “an attempt to help them [underground organizations etc.] get a hearing ”. This phraseology is typical of the content and argument in numerous affidavits attached to the motion papers.
The letter itself was not the result of an attempt by any news media to obtain information or even to give a forum to a group such as the “Weathermen” to express political opinion. The letter and the telephone call to the station are rather in the nature of a boast by this organization that it could and would take the law into its own hands in avenging the deaths at Attica Prison. The protection given to the press by section 79-h must be subservient to the furtherance of public policy requiring investigation of crime and prosecution therefor, at least where the information received is not the result of affirmative questioning of persons by a news media agency acting as such. The perpetrators of the criminal act in the building at Albany do *358 not seek privilege for their communication which was voluntarily made by them and passively received by Station WBAI-FM. Bights of dissident groups to expression of views and to have the source of such expressions kept confidential might well be protected by section 79-h. To hold that exercise of these rights transcends the enforcement of the criminal law would approach the ludicrous where no confidences were involved and where the media was not exercising a news gathering function when the information was given.
Although liberal interpretation of pertinent statutes might well be deemed desirable in passing upon the issues of protection of civil rights as such, laws, even in this category, cannot be distorted through breadth of interpretation to the point of impairing the orderly process of investigation of crime and prosecution of criminals. The statement in the Governor’s memorandum approving the legislation in question that ‘‘ Freedom of the press is one of the foundations upon which our form of government is based ” (N. Y. Legis. Annual, 1970, p. 508) is, of course, not subject to argument. The fact is, however, that freedom of the press is not involved in consideration of the instant circumstances. This court, accordingly, is not passing on the fall scope of section 79-h as it affects civil rights of the news media generally, but, under the facts before us, the conclusion is inescapable that this section of the Civil Bights Law does not afford a basis to quash the subpoena herein. The motion is in all respects denied. Failure to comply with the subpoena duces tecum under consideration would afford the basis for appropriate contempt proceedings.